1  J. Bernard Alexander, III (SBN 128307)
2  balexander@amfllp.com
   **ALEXANDER MORRISON + FEHR LLP**
3  1900 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067
   (310) 394-0888
5  (310) 394-0811 (facsimile)

6
   R. Scott Oswald, Esq., *Pro Hac Vice to be filed*
7  Adam A. Carter, Esq., *Pro Hac Vice to be filed*
   Austin R. Szabo, CA Bar No. 339469
8  THE EMPLOYMENT LAW GROUP, P.C.
9  1717 K Street NW, Ste. 1110
   Washington, D.C. 20006
10 (202) 261-2806
11 (202) 261-2835 (facsimile)

12
   *Attorneys for Plaintiff James Neuhauser*
13

14                 **UNITED STATES DISTRICT COURT**
                   **CENTRAL DISTRICT OF CALIFORNIA**
15

16  _____
                                        )
17  **JAMES NEUHAUSER,**                )
                                        ) Case No. _____
18           **Plaintiff,**             )
                                        )
19      v.                              )
                                        )
20  **FAT BRANDS INC.,**                ) **COMPLAINT FOR DAMAGES**
                                        )
21                                      )
                                        )
22           **Defendant.**             ) Retaliation in Violation
                                        ) of the Sarbanes-Oxley Act of 2002
23                                      ) 18 U.S.C § 1514A
24                                      )
                                        ) **JURY TRIAL DEMANDED**
25  _____)

26

27

28

**COMPLAINT FOR RELIEF UNDER THE CORPORATE AND CRIMINAL FRAUD ACCOUNTABILITY ACT OF 2002, 18 U.S.C. § 1514A**

Plaintiff James Neuhauser, through his attorneys, files this complaint of whistleblower retaliation before the United States District Court for the Central District of California pursuant to the employee protection provisions of the Sarbanes-Oxley Act of 2002, 18 U.S.C § 1514A ("SOX"), alleging that Defendant FAT Brands Inc. ("FAT") unlawfully retaliated against him for his engaging in protected activity under SOX. Plaintiff requests a jury trial for all issues to be so tried.

**Parties**

1. Plaintiff is a resident of Washington, D.C. and is a former employee of Respondent.

2. Defendant is a Delaware corporation with its principal place of business and headquarters located at 9720 Wilshire Blvd., Beverly Hills, CA 90212.

**Jurisdiction and Venue**

3. This Court has jurisdiction over this action by reason of 28 U.S.C. § 1332 and 18 U.S.C. § 1514A(b)(1)(B).

4. Defendant is subject to the personal jurisdiction of this court because Defendant's headquarters and principal place of business are located at 9720 Wilshire Blvd., Beverly Hills, CA 90212.

5. Venue is proper in this court because the Defendant resides within this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (c)(2) and has sufficient contacts to be subject to the personal jurisdiction of this judicial district pursuant to 28 U.S.C. § 1391(d).

**Procedural History of Neuhauser's SOX Claim**

6. On September 21, 2023, Neuhauser filed a SOX retaliation claim with the Department of Labor's Occupational Safety and Health Administration ("OSHA").

7. On November 30, 2023, OSHA issued its "findings" in which it determined that FAT is a covered company under SOX\, that Neuhauser is a covered employee within the meaning of SOX, and that Neuhauser did not suffer an adverse action.

8. Pursuant to 29 C.F.R. § 1980.106(a), Neuhauser timely requested a hearing before a Department of Labor Administrative Law Judge on December 26, 2023. Neuhauser's case was docketed as OALJ Case No: 2024-SOX-00016 ("the OALJ case") and assigned to Administrative Law Judge ("ALJ") William P. Farley.

9. On December 21, Neuhauser filed a statement of claims with the American Arbitration Association asserting that FAT breached its employment contract with Neuhauser by terminating Neuhauser from his full-time position as executive chairman of the board without cause and failing to compensate him accordingly pursuant to his employment contract ("the AAA arbitration").

10. On March 19, 2024, ALJ Farley set a hearing in the OALJ case for October 29, 2024.

11. All discovery was to be completed by August 30, 2024, pursuant to the joint discovery plan filed jointly by the parties on April 22, 2024.

12. On May 9, 2024, the federal government indicted FAT and its former president and chief executive officer Andrew Wiederhorn alleging, *inter alia*, violations of the Internal Revenue Code. The case is CR. No. 2:24-cr-00295 and is currently pending in the United States District Court for the Central District of California.

13. On May 10, 2024, the SEC sued FAT Brands and Andrew Wiederhorn alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. The case is 2:24-cv-03913 and is currently pending in the United States District Court for the Central District of California.

- 3 -

*Neuhauser v. FAT Brands Inc.*
CASE NO. _____

14. The parties exchanged written discovery on August 7, 2024.

15. Neuhauser provided all responses to written discovery and responsive documents in his possession, but FAT withheld its responsive documents, and, on August 7, 2024, after stating that its document production was "forthcoming," informed Neuhauser that that it would like to meet and confer regarding a protective order for confidential documents.

16. On August 26, 2024, upon a request of the parties originally initiated by FAT, the arbitrator in the AAA arbitration continued the AAA hearing to April 14-16, 2025.

17. On August 29, 2024, Neuhauser filed a motion to stay the OALJ case pending the resolution of the criminal charges filed on May 9, 2024. FAT opposed a stay but agreed to a continuance of the hearing in line with the parties' original intent to coordinate discovery in the AAA arbitration and the OALJ matter for efficiency purposes.

18. On September 11, 2024, Gibson, Dunn & Crutcher LLP entered its appearance on behalf of FAT in the OALJ matter. Gibson Dunn, prior to entering their appearance in the OALJ case and continuing to the present, was engaged in defending Wiederhorn in the criminal indictment brought by the federal government.

19. Despite repeated attempts by Neuhauser to negotiate an agreeable protective order in the months preceding this filing, no protective order has been agreed in the AAA arbitration or the OALJ matter, and FAT has continued to withhold all responsive documents from Neuhauser as of the date of filing of this complaint.

20. On October 10, 2024, following the parties' joint motion to amend the joint discovery plan, ALJ Farley cancelled the hearing set for October 29, 2024.

21. While an order setting a new date for a hearing has not been entered in the OALJ case, the parties proposed June 17-19, 2025, for the rescheduled hearing.

**Factual Allegations**

- 4 -

22. FAT is a publicly traded corporation holding classes of securities registered under Section 12 of the Securities Exchange Act, 15 U.S.C. § 78(o)(d), and is required to file reports under Section 15(d) of the Securities Exchange Act.

23. FAT hired Neuhauser on or about July 12, 2022, as its executive chairman reporting to the company's independent board of directors. Neuhauser supervised FAT's legal and finance departments, as well as the company's equity capital markets activities.

24. Neuhauser and FAT entered into an employment contract, executed on or about July 12, 2022, that entitles Neuhauser, subject to signing a separation agreement and releasing claims against FAT, to receive one year of base compensation, a bonus to equal one year of base compensation, and the immediate vesting of any outstanding unvested equity awards in the event of his termination without cause or a change of control of the company.

25. In or about December 2022 and at the direction of a special investigative committee comprising the independent members of the board of directors and Neuhauser, a third-party law firm concluded a year-long internal investigation and presented findings concerning transactions between FAT, its chief executive officer, Andrew Wiederhorn, and FAT's former parent company, Fog Cutter LLC, that had allegedly not been approved by FAT's leadership other than Wiederhorn and that were allegedly not properly disclosed to FAT's board of directors and regulatory authorities.

26. Thereafter, Wiederhorn recommended in or about December 2022, that FAT's charter be changed to decrease the duration of appointments to FAT's board of directors from three years per member, with different members terms ending each year, to one-year terms that all ended at the end of each year, ostensibly to improve corporate governance. A majority shareholder was allowed to remove any member of FAT's board at any time and for any reason as part of that charter change.

27. Immediately thereafter Wiederhorn's family office, FOG Holdings (the company's majority shareholder) removed Squire Junger, who spearheaded FAT's internal investigation into the potentially illegal transactions, from its board of directors in or about late December 2022.

28. After discussions with the remaining independent directors and counsel, Neuhauser advised Wiederhorn in or about January and February of 2023 in a series of three in-person conversations that Wiederhorn should step down as chief executive officer while federal investigators continued their investigation into the transactions.

29. Wiederhorn became aware in or about February of 2023 that federal investigators contacted Neuhauser and wanted Neuhauser to meet with them to discuss his knowledge of the transactions.

30. Neuhauser reminded Wiederhorn in the last of their three conversations on this issue of the March 6, 2023, deadline at which time the special investigative committee of the board would recommend to the full board whether Wiederhorn should be terminated by the board if he had not yet resigned. Wiederhorn remarked to Neuhauser, that if things did not work out well, "[w]ouldn't it be a shame if you lost all your restricted stock?" Wiederhorn was referencing the 110,000 shares of FAT stock that FAT issued Neuhauser upon joining the company and subsequently added to.

31. On or about March 4, 2023, Wiederhorn announced that he would be resigning as CEO of FAT and that a plan for transition would be forthcoming.

32. On or about March 9, 2023, Neuhauser met with federal investigators from the Federal Bureau of Investigation ("FBI"), U.S. Securities and Exchange Commission ("SEC"), Internal Revenue Service ("IRS"), and U.S. Attorney's offices. The investigators asked Neuhauser about his knowledge of the transactions between FAT, Wiederhorn, and Fog Cutter,

as well as his knowledge of any disclosures that were made concerning the transactions.

33. Neuhauser reported what he knew about the transactions and disclosures to the investigators. Investigators also presented Neuhauser with evidence that suggested that Wiederhorn had withheld information from FAT's internal investigation and that indicated that the securities laws violations they were investigating were more substantial than Wiederhorn previously disclosed to Neuhauser and the board.

34. On or about March 29, 2023, Wiederhorn announced that his family office, FOG Holdings, as majority shareholder, had removed the entirety of the board, except Wiederhorn himself, and had named replacement members to the board consisting primarily of members of his own family and other family friends. He also announced that FAT converted to a controlled company, which exempts the company from certain SOX regulations including the requirement for a majority of independent board members.

35. Wiederhorn then told Neuhauser and all of the other now-former independent board members except one, that they should notify him by 9:00 a.m. the next morning if they wanted to be reappointed to the board. Neuhauser's restricted stock shares were cancelled at that time.

36. Wiederhorn then told Neuhauser that Neuhauser could accept a new, lower-ranking, position within FAT as its vice chairman (later clarified to be executive vice president) and head of equity capital markets. This new job would report to the new chief executive officer directly rather than to an independent board of directors. Wiederhorn had previously indicated that Rob Rosen and Ken Kusick would be the new co-chief executive officers, and in fact they were appointed to that position shortly thereafter. Both Rosen and Kusick had previously reported to Neuhauser.

37. On or about April 4, 2023, Neuhauser sent an email to Gina Soto, FAT's head of

human resources, advising FAT that he was exercising his contractual rights arising out of his termination without cause and the change of control of the company.

38. On or about April 6, 2023, FAT's general counsel replied to Neuhauser's email and claimed that FAT had not terminated Neuhauser, that there had been no change of control, and declined to honor the provisions within Neuhauser's employment contract. Negotiations commenced to resolve the dispute.

39. In or about May 2023, FAT's representatives advised Neuhauser that the resolution of his separation claims was contingent upon his agreeing to meet with and provide information to Wiederhorn's personal attorneys representing Wiederhorn in the investigation into his illegal transactions.

40. FAT's representatives advised Neuhauser that he would not receive any separation pay or other benefits unless he complied with this demand and that any payment he did receive would be in installments to ensure his ongoing cooperation. Neuhauser refused.

41. FAT's termination of Neuhauser's employment has harmed his career, his professional and personal reputation, and has harmed him financially. Neuhauser suffers from mental anguish due to his termination and FAT's prior treatment of him due to FAT's unlawful conduct, and he will continue to suffer damages into the future.

**COUNT I**
**Sarbanes-Oxley Whistleblower Retaliation**
**Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A *et seq.***

42. Neuhauser hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

43. Section 806 of SOX applies to any publicly traded company that holds a class of securities registered under Section 12 of the Securities Exchange Act or any publicly traded company that is subject to the periodic reporting requirements of Section 15(d), or any officer,

employee, contractor, subcontractor, or agent of such company. 18 U.S.C. § 1514A(a).

44. FAT is a publicly traded company that holds a class of securities registered under Section 12 of the Securities Exchange Act, required to file 10-K reports under sections 12(b), 13 and/or 15(d) of the Securities Exchange Act. FAT is thus a covered employer under SOX.

45. Neuhauser is a covered employee under SOX.

46. Section 806 of SOX protects employees who engage in protected conduct by "provid[ing] information, caus[ing] information to be provided, or otherwise assist[ing] in an investigation regarding any conduct which the employee reasonably believes constitutes" securities fraud, wire fraud, bank fraud, or violation of "any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1).

47. Neuhauser participated in an interview on March 9, 2023, with investigators from the FBI, SEC, IRS, and U.S. Attorneys' offices.

48. FAT took adverse actions against Neuhauser, including terminating his employment and offering him a new position with diminished job duties in violation of SOX, 18 U.S.C. § 1514A, in retaliation for Neuhauser's protected activity in reporting his knowledge concerning whether Wiederhorn and/or FAT violated securities laws and regulations.

49. FAT had no legitimate business reasons for the actions it took against Neuhauser, and its stated reasons for the adverse actions it took against Neuhauser are pretextual.

50. For FAT's retaliation in violation of SOX, Neuhauser is entitled to legal and equitable relief to effectuate the purposes of SOX, including, among other things, reinstatement of his job title and responsibilities, backpay, economic damages, compensatory damages, special damages, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

Neuhauser respectfully requests that he be awarded the following relief against FAT:

a.  Reinstatement, including backpay and other make whole relief;

b.  Economic damages for lost compensation and benefits, as well as damage to his career, reputation, and earning capacity;

c.  Compensatory damages, including but not limited to pain and suffering, emotional distress, and reputational damage;

d.  Special damages;

e.  Attorneys' fees and costs; and

f.  Any other such relief that the Court may deem just and equitable.

## JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.

Dated: January 17, 2025

Respectfully submitted,

*s/ J. Bernard Alexander, III*

J. Bernard Alexander, III (SBN 128307)
balexander@amfllp.com
**ALEXANDER MORRISON + FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
(310) 394-0888
(310) 394-0811 (facsimile)

R. Scott Oswald, Esq., *Pro Hac Vice to be filed*
Adam A. Carter, Esq., *Pro Hac Vice to be filed*
Austin R. Szabo, CA Bar No. 339469
THE EMPLOYMENT LAW GROUP, P.C.
1717 K Street NW, Ste. 1110
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
aszabo@employmentlawgroup.com
soswald@employmentlawgroup.com
acarter@employmentlawgroup.com

*Attorneys for Plaintiff James Neuhauser*